UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY ALLEN BENNETT,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security<br><br>Defendant. | No. 2:17-cv-555-EFB<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for a period of disability and Disability Insurance Benefits ("DIB") under Titles II of the Social Security Act. The parties have filed cross-motions for summary judgment. ECF Nos. 13, 16. For the reasons discussed below, plaintiff's motion for summary judgment is denied and the Commissioner's motion is granted.

I.     Background

Plaintiff filed an application for a period of disability and DIB, alleging that he had been disabled since April 5, 2005. Administrative Record ("AR") 307-08. Plaintiff's application was denied initially and upon reconsideration. *Id.* at 198-202, 205-09. On October 20, 2014 and March 11, 2015, hearings were held before administrative law judge ("ALJ") David G. Buell. *Id.* at 56-160. Plaintiff was represented by counsel at both hearings, at which he testified. *Id.*

/////

1

Plaintiff's wife also testified at the first hearing, and a vocational expert testified at the second hearing. *Id.* at 96-100, 150-58.

On June 24, 2015, the ALJ issued a decision finding that plaintiff was not disabled under sections 216(i) and 223(d) of the Act.[1] *Id*. at 30-48. The ALJ made the following specific findings:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2012.

2. The claimant did not engage in substantial gainful activity during the unadjudicated period from March 21, 2009 through his date last insured of December 31, 2012 (20 CFR 404.1571 *et seq*.).[2]

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq*. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

3. Through the date last insured, the claimant had the following severe impairments: left knee internal derangement and degenerative joint disease, posttraumatic stress disorder (PTSD), mild degenerative disc disease of the lumbar spine, left ear hearing loss, status post retinal detachment of the left eye, and headaches (20 CFR 404.1520(c)).

\* \* \*

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

\* \* \*

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except he can occasionally stoop, kneel, crouch and crawl. He cannot climb ladders, ropes or scaffolds. He must avoid hazards of working at unprotected heights, around dangerous, unguarded moving machinery, or operating a motor vehicle. He must avoid extreme background noise but can work in a typical indoor setting such as office, medical, educational, retail, or light manufacturing setting. He can perform work that does not require binocular vision. He can perform simple, routine, and repetitive work. He can respond to routine changes in the workplace and can tolerate brief, superficial contact with the public.

\* \* \*

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1563).

\* \* \*

7. The claimant was born [in] 1971 and was 41 years old, which is defined as a younger individual age 19-44, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

---

[2] Plaintiff previously filed an application for DIB benefits, which was denied on March 20, 2009. AR 213.

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).
    * * *

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from April 5, 2005, the alleged onset date, through December 31, 2012, the date last insured (20 CFR 404.1520(f)).

*Id.* at 32-47.

Plaintiff's request for Appeals Council review was denied on December 19, 2016, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 7-12.

II.  Legal Standards

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

/////

1  III. Analysis

   Plaintiff argues that the ALJ erred by (1) rejecting opinions from non-examining physicians without sufficient reasons, and (2) relying on the vocational expert's testimony to find that he could perform past prior work. ECF No. 13 at 5-13.

   A. Medical Opinion Evidence

   Plaintiff first argues that the ALJ erred by rejecting the opinions from state agency non-examining physicians, finding that plaintiff is moderately impaired in his ability to interact with others. ECF No. 13 at 5-11.

   The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "The weight afforded a non-examining physician's testimony depends on the degree to which they provide supporting explanations for their opinions." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1201 (9th Cir. 2008). An ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998).

   Two state agency non-examining physicians reviewed plaintiff's records and provided opinions as to his mental limitations.[3] Dr. James Levasseur, Ph.D., completed a psychiatric review technique form ("PRTF")[4] that included an opinion that plaintiff has moderate difficulties in maintaining social functioning and concentration, persistence, and pace. AR 166. He also completed a residual functional capacity ("RFC") assessment, opining that plaintiff was able to

---

[3] The record also contains medical opinions assessing plaintiff's physical limitations, but plaintiff does not challenge the ALJ's treatment of those opinions.

[4] When a claimant alleges disability due to a mental impairment, the Commissioner's regulations require the ALJ to follow a special Psychiatric Review Technique Form ("PRTF") in reviewing the claim at step two and three of the sequential evaluation. 20 C.F.R. § 404.1520a; *see Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 725 (9th Cir. 2011). The ALJ must first determine whether a medically determinable mental impairment exists (20 C.F.R. § 404.1520a(b)), and then rate the degree of functional limitation in four broad areas (activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation) (20 C.F.R. § 404.1520a(c)). If the claimant has a severe mental impairment, the ALJ must then proceed to step three of the analysis and determine whether the claimant satisfies a specific listing for a mental disorder. *Keyser*, 648 F.3d at 725.

understand and follow simple and complex instructions; produce concentrated effort needed to complete simple and complex tasks with adequate persistent, pace, and reliability, but with occasional disruption from anxiety; present with an appropriate appearance; cooperate, carry on a normal conversation, get along with others at home, in public, and at work with occasional problems with social interaction due to PTSD; and adapt to the demands of an informal work environment. *Id*. at 169. Dr. James Brown, Ph.D. reviewed plaintiff's medical records and affirmed Dr. Lavasseur's opinion. *Id*. at 178, 182.

Plaintiff argues that in assessing his RFC, the ALJ rejected without explanation Dr. Levasseur and Dr. Brown's opinions that plaintiff is moderately limited in his ability to interact and get along with the general public and coworkers. ECF No. 13 at 7. The Commissioner, relying on *Stubbs-Danielson v. Astrue*, 539 F.3d 1169 (9th Cir. 2008), argues that the ALJ's RFC determination adequately captured Dr. Lavasseur and Dr. Brown's opinion, including the limitations regarding plaintiff's ability to interact with the public and coworkers. ECF No. 16 at 7.

In *Stubbs-Danielson*, the Ninth Circuit held that "an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, and pace where the assessment is consistent with restrictions identified in the medical testimony." *Id*. at 1174. The medical testimony relied upon by the ALJ in *Stubbs-Danielson* found that the plaintiff retained the ability to perform simple tasks notwithstanding some evidence that the plaintiff had deficiencies in pace. *Id*.

Here, although both state agency physicians found that plaintiff had moderate impairments in social function, and would occasionally have problems with social interactions, they both opined that plaintiff could perform simple and complex tasks as well as "cooperate, carry on a normal conversation, [and] get along with others at home, in public and at work." AR 169, 182. The ALJ's RFC determination—which limited plaintiff to simple, routine, and repetitive work with only brief, superficial contact with the public—adequately captured their medical opinions pertaining to social interactions. *See Stubbs–Danielson*, 539 F.3d at 1174 (an ALJ may translate assessed mental limitations into "the only concrete restrictions available to

6

him."); *see also* SSR 85–15 (simple and reparative or unskilled jobs "ordinarily involve dealing primarily with objects, rather than with data or people.").

Moreover, substantial evidence in the record supports the finding that plaintiff was not significantly impaired in his ability to interact with others. As observed by the ALJ, medical records regularly noted that plaintiff's behavior was cooperative, pleasant, or appropriate during examinations. *See, e.g.,* AR 34, 557, 674, 769, 1087, 1092, 1133, 1144, 2187. In his functional report, plaintiff stated that he did not have problems getting along with others. *Id*. at 363. The record also supports the ALJ's finding that plaintiff is able to travel and interact with family and friends. *See, e.g., id*. at 34, 652 (plaintiff stayed with friends after getting into a fight with his wife), 943 (reflecting plaintiff was sailing with friends); 1002 (plaintiff reported he traveled to west coast to be with mother after she suffered a heart attack). Although plaintiff disputes that these records demonstrate an ability to interact with the public or coworkers, the ALJ's interpretation of the evidence was reasonable. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (court's must defer to the ALJ's reasonable interpretation of the evidence).

Accordingly, the ALJ's RFC determination properly accounted for Dr. Lavasseur and Dr. Brown's opinions.

B.  Vocational Expert's Testimony

Plaintiff also argues that the ALJ erred at step-five of the sequential evaluation by relying on the vocational expert's testimony to find that he was not disabled. ECF No. 13 at 11-13.

At the fifth step, the ALJ is required to "identify specific jobs existing in substantial numbers in the national economy that [the] claimant can perform despite her identified limitations." *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995). The ALJ must first assess the claimant's residual functional capacity ("RFC"), which is the most the claimant can do despite his physical and mental limitations. 20 C.F.R. § 416.945(a)(1). The ALJ then must consider what potential jobs the claimant can perform given his RFC, age, education, and prior work experience. 20 C.F.R. § 416.966; *see Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). "In making this determination, the ALJ relies on the DOT, which is the SSA's primary source of reliable job
/////

7

information regarding jobs that exist in the national economy." *Zavalin v. Colvin*, 778 F.3d 842, 845-46 (9th Cir. 2015) (quotation marks omitted).

In additional to the DOT, an ALJ may rely on testimony from a vocational expert who testifies about the jobs the claimant can perform in light of his limitations. 20 C.F.R. § 416.966(e); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). Generally, occupational evidence provided by a vocational expert should be consistent with the occupational information supplied by the DOT. *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007) (citing SSR 00-4p, at *4). However, "an ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation." *Johnson*, 60 F.3d at 1435.

At the March 2015 hearing, the vocational expert testified that a hypothetical individual with plaintiff's education, work experience, and residual functional capacity could perform the following positions: assembly (3,000 jobs in California and 20,000 nationally; inspector (2,000 jobs in California and 13,000 nationally); and loader (2,000 jobs in California and 20,000 nationally). Plaintiff argues that the ALJ erred by relying on the vocational expert's testimony regarding the number of available jobs for the assembly, inspector, and loader positions. According to plaintiff, the vocational expert's testimony was not consistent with the Occupational Outlook Handbook ("OOH"), which suggests fewer available jobs than the numbers provided by the vocational expert. ECF No. 13 at 12-13. Thus, plaintiff contends that "[a] reasonable mind would not accept the vocational expert's statistics for each occupation." *Id*. at 13.

Plaintiff's argument is foreclosed by Ninth Circuit authority. *See Shaibi v. Berryhill*, 870 F.3d 874, 878 (9th Cir. 2017) ("[W]e can find no case, regulation, or statute suggesting that an ALJ must sua sponte take administrative notice of economic data in the . . . OOH . . . . Our precedent holds, instead, that an ALJ may rely on a vocation expert's testimony concerning the number of relevant jobs in the national economy, and need not inquire sua sponte into the foundation for the expert's opinion.); *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) ("A VE's recognized expertise provides the necessary foundation for his or her testimony" and "no additional foundation is required.").

IV. Conclusion

Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment is denied;

2. The Commissioner's cross-motion for summary judgment is granted; and

3. The Clerk is directed to enter judgment in the Commissioner's favor and close the case.

DATED: September 17, 2018.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE